[No. 27991. Department One. · July 1, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Oliver T. Erickson, Plaintiff,* v. ALBERT C. MARTIN, *as State Land Commissioner, Respondent,* MATHENY & BACON, INC., *Intervener.*[1]

[1]Reported in 103 P. (2d) 1097.

422

*A. A. Booth,* for relator.

*The Attorney General, W. A. Toner* and *June Fowles, Assistants,* for respondent.

*Rummens & Griffin,* for intervener.

MILLARD, J.—This is an original application in this court for a writ of mandate requiring the state land commissioner, under the provisions of Rem. Rev. Stat., §§ 7984, 7985, to appraise and determine the value of all improvements existing upon the property, including the cost of filling and raising said property above high tide, described in state tide land lease No. 932. By answer, in which the respondent joins, the intervener resists the application on the ground that the preference right of purchase from the state of the tide lands in question is vested in intervener under assignment by relator to intervener of the preferential right of purchase or lease under state tide land lease No. 932.

November 1, 1899, the state issued tide land lease No. 932 to one Moler covering lot 2, block 279, of Seattle tide lands, King county, Washington. The lease was for a period of thirty years, expiring October 31, 1929. Prior to its expiration, relator acquired the rights of Moler in and to the lease, which was renewed for a ten-year period expiring October 31, 1939.

By an instrument entitled "Sub-lease of said tide lands and sale of improvements," relator transferred the property in question to intervener. Under the terms of that instrument, the material portion of which reads as follows, the intervener paid five thousand dollars to relator for the "buildings, elevators and fixtures" upon the land, and also paid a monthly rental of sixty-five dollars to Erickson:

"Upon final payment of said $3,000 purchase price balance and interest, parties of the first part hereby assign and grant to party of the second part all rights

and interest they or either of them may have to said buildings, elevators and fixtures as against the state of Washington, and to the proceeds from sale of such improvements in case the land is sold or leased by the state, and to all benefit of state appraisal of said improvements and preference right of purchasing or leasing said land and improvements from the state, providing that at the time of exercising such privilege party of the second part be not in default of any rent due parties of the first part for the land, and excepting and reserving to parties of the first part all right to compensation or proceeds from the state, its assigns or lessees on account of local improvement assessments including fill paid by parties of the first part. At the expiration of said present lease from the state, providing party of the second part shall have fully complied with this contract, parties of the first part shall execute and deliver to party of the second part a release and quitclaim deed to said improvements and a proper assignment of said original lease and all rights therewith, except as to said local improvement assessment including fill above mentioned."

Under the foregoing contract, intervener paid relator five thousand dollars in cash for the improvements upon the premises and also paid a total rental for a period of ten years of seven thousand eight hundred dollars. Intervener applied to the state land commissioner for a new lease, and relator, after demand made therefor, executed the required quitclaim deed to intervener, so that no question is presented as to the preferential right of intervener to lease or purchase the lands from the state.

On the theory that, under the reservation in his contract with intervener of the right to compensation "on account of local improvement assessments including fill" paid by him, the subsequent lessee or purchaser of the lands in question would be obligated to compensate the relator in an amount equal to the value of all improvements upon the property, including the cost of

the fill, relator made application to this court for a writ of mandate directed to the state land commissioner as recited above.

The applicable sections of the statute read as follows:

"Should any present or future lessee of tide lands of the state of Washington, or any owner or holder of such leases, fail to exercise the preference right of purchase from the state, of the tide-lands covered by any lease within the time prescribed by any existing law, or any law which may hereafter be enacted, then and in that event, the board of state land commissioners shall appraise and determine the value of all improvements then existing upon such property, including the cost of filling and raising said property above high tide, whether filled in or raised above high tide, by such lessee or owner of such lease, or by virtue of any contract made with the state of Washington, and also including the then value to the land of all existing local improvements, paid for by such lessee or owner of such lease." Rem. Rev. Stat., § 7984.

"Should such tide-lands be relet or sold to any person, persons or corporation other than such lessee or owner of such lease, the bid of such subsequent lessee or purchaser shall not be accepted until the payment by such subsequent lessee or purchaser to the owner of such former lease, the appraised and fixed value of such improvements aforesaid as determined by said board of state land commissioners, or as may be determined upon appeal, and said board is authorized to compel by subpoena the attendance, swear and examine witnesses to such values." Rem. Rev. Stat., § 7985.

■ Under the contract of relator with intervener, the former sold to the latter the preference right of purchasing or leasing from the state the land and improvements in question. The statute is clear. It provides that, should any present or future lessee of tide lands of the state, or any owner or holder of such leases, fail to exercise the *preference right of purchase* from

the state, then and in that event there shall be an appraisal and determination by the land commissioner of the value of all improvements then existing upon the property, including the cost of filling and raising the property above high tide. Should the tide lands be relet or sold to any person other than the lessee or owner of the lease, the bid of such subsequent lessee or purchaser shall not be accepted until he has paid to the owner of the former lease the appraised and fixed value of the improvements upon the land.

It is a *sine qua non,* under the statute, to appraisal and determination of the cost of the fill, that the owner of the tide land lease fail to exercise the preference right of purchase or renewal of lease from the state, of the tide lands covered by such lease.

In the case at bar, the intervener is the owner and holder of the preferential right. It is the lessee or owner referred to in the statute. It has made application for reletting of the lands to it, therefore appraisement is unnecessary. The reservation mentioned above in the contract between the relator and the intervener will be of significance only if the lands in question are leased or sold to one who does not hold the preference right. Until that occurs, demand for appraisal and determination of the cost of the fill, may not, under the sections of the statute quoted above, be successfully made.

The writ is denied.

BLAKE, C. J., BEALS, ROBINSON, and SIMPSON, JJ., concur.